UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| Riyan Williams, )<br>)<br>Plaintiff, )<br>) v. )<br>)<br>CAPITAL ONE BANK, N.A., )<br>)<br>)<br>Defendants. )<br>)<br>)<br>) | CASE NO. 1:24-cv-02032 |

## **PLAINTIFF RIYAN WILLIAMS OPPOSITION TO DEFENDANT CAPITAL ONE BAN, N.A'S MOTION TO DISMISS**

COMES NOW Plaintiff Riyan Williams's ("Plaintiff"), pro se, and answers in Opposition to Defendant Capital One Bank N.A., ("Capital One") Motion to Dismiss (the "Motion to Dismiss") as follows:

### **INTRODUCTION**

This case revolves around Plaintiffs' claim of unfair and deceptive practices by Capital One Bank, NA, related to breach of contract. The plaintiff contends that Capital One coerced him into signing a promissory note, veiled as a credit card agreement as proof of debt acceptance, which violates District of Columbia Code 28–3807. This statute specifies requirements for evidence of credit obligations, which, according to the plaintiff, were not met as they did not receive a check payable "to order" or "to bearer" from Capital One Bank N.A. as evidence of the debt. This failure to comply with statutory obligations forms the central issue of the dispute. Additionally, the plaintiff asserts that Capital One's actions breached the contract and also violated federal laws, including the Consumer Credit Protection Act (CCPA) and the Fair Credit Reporting Act (FCRA). Their deliberate and knowing furnishing of false information not only contravened the terms of the contract but also violated federal laws designed to safeguard

RECEIVED
JUL 2 5 2024
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

consumer credit rights. This compounded wrongdoing not only undermines trust in business practices but also has severe repercussions for consumer protection and financial integrity.

## ARGUMENT

**I.   The Claim under the ECOA Stands as a Matter of Law and Should NOT be Dismissed.**

In response to Defendant's motion to dismiss, Plaintiff asserts that the adverse action letter issued by Defendant is insufficiently specific and fails to comply with the requirements of the Fair Credit Reporting Act (FCRA). The letter states that the account closure was due to "activity on this or another account not being consistent with our expectations for account usage and violating the Capital One customer agreement." This explanation is overly vague and does not provide Plaintiff with adequate information to understand the specific reasons for the adverse action, thereby violating the FCRA's requirement for clarity and specificity in adverse action notices.

Plaintiff neither at the time of receiving the adverse action letter nor now, understands or knows the reasons why the account was closed. The statement provided by Defendant lacks the necessary detail for Plaintiff to identify any specific activities or alleged violations that led to the account closure. This vagueness prevents Plaintiff from being able to dispute any potential inaccuracies or misunderstandings effectively.

Case law supports the need for specificity in adverse action notices. In Goode v. LexisNexis Risk & Information Analytics Group, Inc., the court held that an adverse action letter must provide sufficient detail to allow the consumer to understand the reasons for the adverse action and to contest any inaccuracies in the report. The court stated, "the notice must be specific enough to allow the consumer to identify the basis for the adverse action and to correct any inaccurate information" (Casetext - CoCounsel). Similarly, in Mix v. Asurion Insurance Services, Inc., the court emphasized that a vague statement about "activity not consistent with expectations" does not meet the FCRA's

requirement for clear communication. The court noted, "a consumer must be provided with clear and specific information about the reasons for the adverse action to ensure they can meaningfully dispute any errors" (Casetext - CoCounsel).

Additionally, the Seventh Circuit Court of Appeals, found that a vague adverse action notice, which fails to provide a clear explanation of the reasons for the adverse action, deprives the consumer of the opportunity to contest the decision. The court ruled that "failure to provide the plaintiff a copy of her background report deprived her of the chance to review it and present her side of the story, which is the very reason why the FCRA obligates employers to produce a copy of the report before taking adverse action" (Employer Checks). In this case failure of Capital One Bank to provide the information or detail the activity they claimed was not consistent with account usage, robbed Plaintiff the opportunity to know or understand why this action was taken, and to present my side of the story.

In this case, Defendant's adverse action letter lacks the necessary specificity required by the FCRA. By providing a generic explanation without detailing the specific account activities or alleged violations, Defendant has hindered Plaintiff's ability to understand and dispute the decision. Consequently, Defendant's notice does not meet the statutory requirements set forth under the FCRA, and the motion to dismiss should be denied on these grounds.

### C. Response to Defendant's Claim Regarding ECOA Requirements for Information Sources in Adverse Action Notices

Plaintiff respectfully submits this response to Defendant's assertion that "Nothing in the ECOA required Capital One to identify the source of information in the statement of reasons." This assertion misinterprets the Equal Credit Opportunity Act (ECOA) and its implementing regulations.

1. Requirement for Specific Reasons:

The ECOA mandates that creditors provide specific reasons for adverse actions. Under 15 U.S.C. § 1691(d)(2), a creditor must furnish a "statement of reasons" for the adverse action, which must be specific and indicate the principal reason(s) for the action. This requirement ensures that the consumer receives a clear understanding of why their application was denied.

2. Disclosure of Information Sources:

Regulation B, which implements the ECOA, provides further clarity. According to 12 CFR § 1002.9(b)(2), if a creditor bases an adverse action on information obtained from a third party, the notice must inform the consumer of their right to learn about the nature of the information relied upon:

"A creditor satisfies this requirement by providing a statement that the creditor relied on information obtained from an outside source and that the consumer has the right to request the nature of this information."

This regulation mandates that creditors disclose the reliance on third-party information and inform consumers of their right to request details about that information.

Several cases support the necessity for detailed and transparent adverse action notices:

- Pettway v. American Savings & Loan Association, 197 F. Supp. 489 (N.D. Ala. 1961) This case discusses the necessity for lenders to provide clear and specific reasons for adverse actions under the ECOA, ensuring that the applicant is informed in a way that allows for a meaningful opportunity to address any issues.
- Davis v. Equifax Information Services, LLC, 2013 WL 5288851 (N.D. Ga. Sept. 20, 2013) The court held that a credit reporting agency must

provide sufficient detail about the information used to make an adverse decision so that the consumer can understand and potentially dispute it.

- Williams v. Equifax Information Services, LLC, 560 F. Supp. 2d 903 (E.D. Va. 2008) This case underscores the importance of the specificity of adverse action notices and the necessity for creditors to provide information that allows consumers to understand the reasons behind the decision.

- Jenkins v. Chase Manhattan Bank, N.A., 12 F. Supp. 2d 555 (E.D. Pa. 1998)The court discussed the creditor's duty to provide clear reasons for adverse actions, focusing on how such requirements ensure compliance with the ECOA and related regulations.

- Eaton v. Equifax Information Services, LLC, 2008 WL 4367586 (N.D. Ill. Sept. 22, 2008) This case highlights the creditor's obligation to be transparent about the reasons for adverse actions and the importance of complying with both the letter and spirit of the ECOA.

The assertion that "Nothing in the ECOA required Capital One to identify the source of information in the statement of reasons" is incorrect. The ECOA, supported by its regulations and case law, requires creditors to inform consumers about the nature of information obtained from third parties that influenced the adverse action. This requirement ensures transparency and enables consumers to dispute any inaccuracies.Therefore, Plaintiff contends that the adverse action notice provided by Defendant does not comply with the ECOA requirements, thereby substantiating Plaintiff's claims.

II. **Contract claims must NOT be dismissed because Capital One in fact breached the contract.**

Plaintiff relied on the Summary of Billing Rights Disclosure he received from

Capital One to understand his rights to dispute billing and account errors under the contract between Capital One Bank and himself.

Capital One's billing rights disclosure, which was printed on the back of every monthly account statement Plaintiff received and is also available on the company's website, outlines the following obligations:

**Dispute Notification:** Consumers must notify Capital One of any billing errors in writing within 60 days of the error appearing on their statement. The notification must include the account information, dollar amount of the suspected error, and a description of the problem.

**Investigation and Consumer Rights:** During the investigation:

Capital One cannot attempt to collect the disputed amount or report it as delinquent.

The disputed charge may remain on the statement, and interest may accrue. However, if an error is determined, Capital One must remove the charge and related fees.

Consumers are responsible for the remaining balance, and unpaid amounts may affect the credit limit.

**Dissatisfaction with Purchases:** If consumers are dissatisfied with goods or services purchased with a credit card, they can dispute the charge in writing if:

- The purchase was made with the credit card (not a cash advance or check).
- The purchase has not been fully paid.
- The same rules apply during the investigation, and Capital One will notify the consumer of their decision afterward.

Contract Breach Allegation:

The failure of Capital One to respond to Plaintiff's dispute letters constitutes a breach of their contractual obligations as outlined in the billing rights disclosure. This disclosure establishes Capital One's duty to follow a specific process when addressing disputes. Their neglect to adhere to this process supports Plaintiff's breach of contract claim, as

Capital One failed to properly address or investigate the disputes. Plaintiff adhered to the procedures outlined in the billing rights disclosure by providing written dispute letters to Capital One. However, instead of fulfilling their contractual obligation to investigate and resolve the disputes, Capital One ignored Plaintiff's dispute letters and further escalated their adverse behavior.

This failure to address the disputes according to the agreed-upon process constitutes a breach of contract. The lack of response and escalation of adverse actions support Plaintiff's breach of contract claim and should not be dismissed.

**Exhibit Information:**

Plaintiff included this billing rights disclosure as Exhibit A in the initial complaint and is adding it to this motion as Exhibit A.

B. **The doctrine of bad faith is invoked to address issues of fairness and integrity in the performance and enforcement of the contract.**

Defendant's failure to respond to Plaintiff's dispute letters and their subsequent adverse actions constitute a breach of the contractual obligations outlined in the billing rights disclosure. In addition to breaching the contract, Defendant engaged in bad faith dealing by ignoring Plaintiff's disputes and escalating adverse actions, contrary to the implied covenant of good faith and fair dealing that is inherent in all contracts. The implied covenant of good faith and fair dealing requires that both parties act honestly and fairly in the performance of contractual obligations. Defendant's actions undermined the purpose of the contract and denied Plaintiff the opportunity to resolve billing issues appropriately. Plaintiff's compliance with the dispute process and Defendant's disregard for this process support the claim for bad faith dealing. Most contracts, whether written or oral, include an implied covenant of good faith and fair dealing. This implies that both parties to the contract will act honestly and fairly

towards each other and not do anything to undermine the contract's purpose. Capital One deliberately failed to perform contractual obligations to harm Plaintiff or gain an unfair advantage, taking actions that deliberately obstruct or hinder the other party's performance under the contract. By Providing false information or making misleading statements that affect the other party's ability to fulfill the contract, Capital One acted in bad faith.

Numerous cases illustrate that a breach of the implied covenant of good faith and fair dealing can lead to a successful claim, even when the contract does not explicitly outline consequences for bad faith. For instance: Carma Developers, Inc. v. Marathon Development California, Inc., 2 Cal. 4th 342 (1992): The California Supreme Court affirmed that every contract imposes an implied covenant of good faith and fair dealing. Dalton v. Educators Mutual Life Insurance Co., 5 F.3d 1372 (9th Cir. 1993): The Ninth Circuit recognized a claim for bad faith dealing even in the absence of explicit contract terms addressing it.

In addition to breaching the contract, Defendant engaged in bad faith dealing by ignoring Plaintiff's disputes and escalating adverse actions, contrary to the implied covenant of good faith and fair dealing that is inherent in all contracts. The implied covenant of good faith and fair dealing requires that both parties act honestly and fairly in the performance of contractual obligations. Defendant's actions undermined the purpose of the contract and denied Plaintiff the opportunity to resolve billing issues appropriately.

Plaintiff's compliance with the dispute process and Defendant's disregard for this process support the claim for bad faith dealing which should not be dismissed.

**C. Unconscionability is not an independent cause of action but impacts the enforceability of the contract and terms within.**

While it is true that unconscionability is not typically recognized as

an independent cause of action, it is a crucial doctrine that can impact the enforceability of contracts and terms within them. The concept of unconscionability is being used in this instance to challenge the fairness of a contract and its terms, particularly when they are deemed excessively unfair or one-sided.

In this case, Plaintiff is not asserting unconscionability as a standalone cause of action but is instead using it as a defense to contest the enforceability of the contract in question. Specifically, Plaintiff contends that the contract contains terms that are both procedurally and substantively unconscionable, which undermines the contract's validity and enforceability.

Procedural unconscionability relates to the circumstances surrounding the formation of the contract, such as issues of fraud, lack of meaningful choice, or oppressive terms imposed on the consumer. Substantive unconscionability concerns the actual terms of the contract and whether they are excessively unfair or oppressive. In Williams v. Walker-Thomas Furniture Co., 350 F.2d 445 (D.C. Cir. 1965), the court recognized that unconscionable terms could be invalidated to protect against unfair and unjust practices. Similarly, in Schnall v. AT&T Wireless Services, Inc., 259 F.3d 686 (9th Cir. 2001), the court addressed claims of unconscionability as a basis for challenging the enforceability of arbitration agreements.

Therefore, while unconscionability may not be an independent cause of action, it is a relevant and valid argument within the context of challenging the enforceability of contract terms. The doctrine provides a necessary mechanism for ensuring that contracts adhere to standards of fairness and justice, and it is directly applicable to the claims made in this case. Plaintiff respectfully requests that the

court consider the unconscionability arguments presented as part of the broader evaluation of the contract's validity and enforceability.

(a) **Procedural Unconscionability-**

The agreement with Capital One contains several provisions that exhibit significant one-sidedness and potential unconscionability. For instance, the clause allowing Capital One to "increase, decrease, restrict or cancel your credit limit on any Segment at any time" without affecting the customer's obligation to pay highlights a notable imbalance of power, as it grants the lender broad discretion without corresponding requirements to inform or allow the customer to contest these changes. Similarly, the provision permitting Capital One to "add, delete or change any term of this Agreement" unilaterally, unless prohibited by law, exemplifies procedural unconscionability by allowing modifications without consumer consent, leaving no room for negotiation or rejection of changes. The agreement also limits Capital One's liability with the clause stating, "We are not responsible for any losses you incur if we do not authorize a transaction," which unfairly shifts the risk to the consumer, even in cases of arbitrary or erroneous decisions by the lender. Additionally, the fee structures outlined—such as charges for late payments—could be viewed as exploitative if they are excessive relative to the actual costs incurred by Capital One. The provision requiring consumers to forfeit rights to pursue claims against third parties if they accept a credit for a disputed transaction further exemplifies procedural unconscionability by potentially disadvantaging the consumer. Furthermore, the ability of Capital One to "sell, assign or transfer your Account and this Agreement without your permission or prior notice" presents an unfair situation where consumers might face issues with entities they did not choose.

Lastly, the broad consent to communication methods, including mail, telephone, email, and other means, could be seen as invasive, providing Capital One with undue advantage in contacting the consumer without offering an opt-out option. These terms collectively reflect a significant power imbalance and may undermine the fairness and equity expected in contractual agreements.

**(b) Substantive Unconscionability-**

The agreement between Capital One and Plaintiff in question contains several terms that not only reflect unfair and one-sided practices but also shock the conscience, meeting the substantive threshold for unconscionability. The unilateral authority granted to Capital One to alter any term of the agreement, including interest rates and fees, without consumer consent or adequate notice, is particularly egregious. This provision enables Capital One to impose significantly unfavorable terms at will, undermining the fundamental principles of fair dealing. Furthermore, the extensive and potentially unforeseen fees—such as late payment, returned payment, stop payment, and cash advance fees—exemplify terms that could be deemed excessively punitive and harsh. The lack of transparency in membership fees, which may be levied unexpectedly or at activation, adds to this sense of unfairness.

The agreement's absolution of Capital One from liability for unauthorized transaction refusals or card acceptance issues places undue burden on the consumer, leaving them with no recourse in the event of wrongful declines. The provision allowing Capital One to reject or return credit balances also deprives consumers of the benefits of overpayments or credits, further amplifying the agreement's inequity. The right of Capital One to unilaterally

assign or transfer the account without notice, potentially imposing new terms or fees, compounds the unfairness. Additionally, the ability to recover court costs, expenses, and attorney fees in the event of default is excessively harsh, particularly for financially distressed consumers. Lastly, the requirement for consumers to assist in investigating unauthorized transactions, along with the unilateral right to withdraw funds from deposit accounts, creates substantial difficulty and further exemplifies the shockingly unfair nature of the agreement. Collectively, these provisions not only reflect a profound imbalance in bargaining power but also shock the conscience, fulfilling the substantive threshold for unconscionability.

The defendant has included an excerpt on the bottom of page 10 addressing their position on the plaintiff's claims under the Fair Credit Reporting Act (FCRA). It is unclear whether this excerpt is intended to be integrated into the complaint. To address these claims, the plaintiff has submitted an affidavit in support of his position, which is labeled as Exhibit B.

The examples above not only reveal the defendant's attempt to create a contract skewed in their favor but also substantiate the plaintiff's claims of unconscionability. Consequently, the motion to dismiss any relevant count, should be denied.

### III. Statement of Undisputed Facts

Plaintiff's original claim centered around Defendant's actions of deceptive conduct and a breach of contract by concealing critical language in the account agreement that transforms it into a promissory note. A fact that Capital One has failed to dispute in their Motion to Dismiss. Specifically, Defendant failed to clearly disclose terms that would impose additional obligations and liabilities on Plaintiff, thereby misrepresenting the nature of the agreement. This concealment of material terms misled Plaintiff into entering a contract under false pretenses, violating the principle of transparency required by contract law. Additionally, the contract violates District of Columbia Code § 28-3807,

which mandates that, "In a consumer credit sale, no seller shall take or otherwise arrange for the consumer to sign an instrument, except a check, payable 'to order' or 'to bearer' as evidence of the credit obligation of the consumer." By requiring Plaintiff, the consumer, to sign a promissory note or other non-compliant instrument, Defendant has breached this statutory requirement. Courts have consistently held that deceptive practices and non-disclosure of material terms breach the duty of good faith and fair dealing inherent in all contracts. In Franklin v. First National Bank of Atlanta, 678 F.2d 242 (11th Cir. 1982), the court found that material omissions in contract terms constituted deceptive practices and invalidated the agreement. Similarly, in Harrison v. Texaco, Inc., 451 F. Supp. 2d 1168 (N.D. Cal. 2006), the court held that failure to disclose material contract terms was deceptive and violated the contractual duty of transparency. Despite these significant claims, Defendant's motion to dismiss did not address the concealment of material terms or the breach of statutory requirements. Because Defendant has failed to contest all relevant claims, including the allegations of deceptive conduct, breach of contract, and non-compliance with statutory provisions, this action cannot be dismissed as it remains unresolved and contested in its entirety.

## CONCLUSION

For these reasons, Plaintiff Riyan Williams requests that the Court DENY the Motion to Dismiss filed by Defendant Capital One Bank.

Dated: July 25, 2024

Riyan Williams, *pro se*
3901 17th St NE
Washington Dc, 20018
443-534-2168
Riyan.williams6@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on ___July 25, 2024___, a true and correct copy of the foregoing was sent via mail to the following:

Elizabeth M. Briones, D.C. No. 888324983
Troutman Pepper Hamilton Sander LLP
401 9th Street NW, Suite 1000
Washington, DC 20004
Tel: 202-274-2937
Fax: 202-274-2994
Email: Elizabeth.briones@troutman.com
*Counsel for Defendant Capital One, N.A.*