UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RIYAN WILLIAMS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   24-2032 (RC) |
| | : | |
| v. | : | Re Document No.:   5 |
| | : | |
| CAPITAL ONE BANK, N.A., | : | |
| | : | |
| Defendant. | : | |

<u>**MEMORANDUM OPINION**</u>

GRANTING DEFENDANT'S MOTION TO DISMISS

### I.  INTRODUCTION

Defendant Capital One Bank, N.A. closed Plaintiff Riyan Williams's credit card account. Williams then filed this action *pro se* against Capital One, claiming that the account closure represented a breach of contract and that Capital One failed to provide a reason for the adverse action in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.* Capital One moves to dismiss Williams's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Williams failed to state actionable claims because Capital One acted in accordance with the Account Agreement and satisfied ECOA.  For the reasons set forth below, the Court grants Capital One's motion to dismiss.

### II.  FACTUAL BACKGROUND

The Court constructs these facts based on Williams's Complaint and subsequent briefing. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139  (D.C. Cir. 2011).  The Court must construe a *pro se* complaint together with all of the *pro se* party's filings and must read *pro se* filings liberally.  *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Williams opened the credit card account at issue with Capital One in May 2023 for personal and family use. *See* Compl. at 17, ECF No. 1-1; *id.* at 54.[1] The Capital One Account Agreement—the contract in dispute in this case—details Williams's obligations regarding the account, including Williams's "promise to pay [Capital One] all amounts due." *Id.* at 40. The Account Agreement also articulates Capital One's rights regarding the account, including the right to "close or suspend" the account with or without notice to Williams and the right to report account information to credit bureaus. *Id.* at 42–43. A few months later, on August 20, 2023, Williams received a letter dated August 18, 2023, stating that Capital One was closing Williams's credit card account "because activity on [the] account [was] not consistent with [Capital One's] expectations for account usage and violate[d] the Capital One Customer Agreement." *Id.* at 20, 48. Williams's credit report dated March 2024 shows a final balance of approximately $569 on the closed account, exceeding the credit limit of $500 by $69. *See id.* at 54. The account status on the report reflects that Williams's $569 balance was "written off." *Id.* A comment on the report additionally shows that Williams's account was "closed at credit grantor's request" without requiring him to pay the remaining balance. *Id.*

After receiving Capital One's letter of account closure, Williams sent a letter to Capital One's P.O. Box on August 22, 2023. *See id.* at 20, 43. In the letter, Williams inquired as to the reasons for account closure and for documentation supporting Capital One's claim that Williams's account activity violated the Account Agreement. *See id.* at 20. The letter appears to have been received by Capital One, as it was sent through certified mail and a Capital One agent signed for the certified mail package on August 31, 2023. *See id.* at 51. Williams alleges that he sent numerous requests for information and clarification to Capital One, but all requests

---

[1] The Court refers here to the page numbers generated by CM/ECF.

including the August 31, 2023, letter went unanswered. *See id.* at 20. Due to Capital One's reports to credit reporting companies regarding Williams's closed account, Williams experienced a significant decrease in credit score on October 15, 2023. *See id.* In an effort to learn the reasons for account closure and restore his creditworthiness, Williams proceeded to dispute Capital One's report to Experian, a credit reporting company. *See id.* at 21–22. Williams was unable to gather further answers through these disputes. *See id.*

Williams initially filed a complaint against Capital One in the Superior Court of the District of Columbia on December 5, 2023, disputing the company's closure of his account. *See* Compl., *Williams v. Capital One Bank, N.A.*, No. 2023-CAB-007360 (D.C. Super. Ct. Dec. 5, 2023). Capital One removed that action to this Court. *See* Notice of Removal, *Williams v. Capital One Bank, N.A.*, No. 23-cv-3898 (Dec. 29, 2023), ECF No. 1. After the parties fully briefed a motion to remand and a motion to dismiss, Williams moved to voluntarily dismiss his case without prejudice because of deficiencies in the complaint and discovery of new information. *See* Pl.'s Mot. to Dismiss Without Prejudice, *Williams v. Capital One Bank, N.A.*, No. 23-cv-03898 (May 3, 2024), ECF No. 12. The Court granted Williams's motion over Capital One's objection. *See* Order Dismissing Case, *Williams v. Capital One Bank, N.A.*, No. 23-cv-3898 (May 19, 2024), ECF No. 14.

Williams filed a new Complaint in District of Columbia Superior Court on June 14, 2024, asserting various contractual claims, including breach of contract (Count One), bad faith and breach of fiduciary duty (Count Two), unconscionability (Count Three), and an ECOA claim (Count Four). *See* Compl. at 14–33. Williams sought compensatory and punitive damages, injunctive relief, attorney's fees as permitted under the Fair Credit Reporting Act, removal of adverse information on his credit report, and the reopening of his account with Capital One. *See*

*id.* at 32. Capital One subsequently filed a Notice of Removal on July 12, 2024, and the action was removed from the Superior Court to this Court on July 15, 2024. *See generally* Notice of Removal, ECF No. 1. Capital One then moved to dismiss the action for failure to adequately state actionable contractual and ECOA claims. *See generally* Def.'s Mot. Dismiss, ECF No. 5; Def.'s Mem. Support Mot. Dismiss ("Def.'s Mot."), ECF No. 5-1. Williams opposed the motion to dismiss, *see generally* Pl.'s Opp'n Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 7, and Capital One replied, *see generally* Def.'s Reply Supp. Mot. Dismiss ("Def.'s Reply"), ECF No. 8.

### III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint" by asking whether a plaintiff has properly stated a claim on which relief can be granted. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In deciding a motion to dismiss under Rule 12(b)(6), a court must consider the whole complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, a court may disregard "inferences drawn by [a] plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (quoting *Kowal*, 16 F.3d at 1276).

To survive a motion to dismiss, a plaintiff must provide "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), that "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S at 570). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are

therefore insufficient to withstand a motion to dismiss. *Id.* In determining a 12(b)(6) motion to dismiss, the Court may consider "only the facts alleged in the complaint [and] any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

The Court, however, will construe a *pro se* complaint liberally and hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court may thus "examine other pleadings to understand the nature and basis of . . . *pro se* claims" as alleged in the complaint. *Gray v. Poole*, 275 F.3d 1113, 1115 (D.C. Cir. 2002). Nevertheless, a *pro se* plaintiff is not excused from adhering to the applicable procedural rules and must "plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678–79). Despite the liberality afforded *pro se* complaints, the Court "need not accept inferences unsupported by the facts alleged in the complaint or 'legal conclusions cast in the form of factual allegations.'" *Kaemmerling v. Lappin*, 553 F.3d 669, 677 (D.C. Cir. 2008) (quoting *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.D.C. 1994)).

## IV.  ANALYSIS

The Court first reviews Williams's breach of contract, bad faith and breach of fiduciary duty, and unconscionability claims, concluding that none of them can succeed based on the facts alleged. *See* Compl. at 24–30 (Counts One, Two, and Three). The Court then reviews Williams's ECOA claim, determining that it, too, must fail. *See* Compl. at 31–32 (Count Four).

5

Lastly, the Court will address Williams's citation of nonexistent authority. *See* Pl.'s Opp'n at 2–5.

### A. Breach of Contract

Williams asserts three breach of contract claims in his complaint. *See* Compl. at 24–30. Count One alleges that Capital One breached the Account Agreement because it "failed to address [Williams's] dispute in a timely and effective manner, and the account closure process was initiated without [Williams's] consent or prior notification." *Id.* at 26. Count Two alleges that Capital One acted in bad faith by engaging in deceptive practices, thereby committing a breach of fiduciary duty, because Capital One closed Williams's account "without providing a specific statement of reasons." *Id.* at 27. Count Three similarly alleges that Capital One "deceiv[ed] consumers" because "the contract incorporate[d] substantively unconscionable and commercially unreasonable terms." *Id.* at 29–30. In response, Capital One argues that Williams's contractual claims must be dismissed with prejudice. *See generally* Def.'s Mot. Specifically, Capital One argues that Williams's breach of contract claim fails as a matter of law because the actions that Williams complains of were properly within the terms of the Account Agreement. *See id.* at 7–8. Capital One further argues that Williams's bad faith and unconscionability claims are not cognizable causes of action. *See id.* at 8–10.

To prevail on a breach of contract claim under District of Columbia law, "a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Howard Town Ctr. Developer, LLC v. Howard Univ.*, 278 F. Supp. 3d 333, 383 (D.D.C. 2017) (quoting *Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015)). The District of Columbia Court of Appeals does not strictly require a plaintiff to demonstrate damages, however, as a party that establishes a contract,

duty, and breach can be "entitled to an award of nominal damages," declaratory relief, or specific performance. *Wright v. Howard Univ.*, 60 A.3d 749, 753 & n.3 (D.C. 2013). A valid contract exists between parties where there are "both (1) agreement as to all material terms, and (2) intention of the parties to be bound." *Carter v. Bank of Am., N.A.*, 845 F. Supp. 2d 140, 144–45 (D.D.C. 2012) (quoting *Kramer Assocs., Inc. v. Ikam, Ltd.*, 888 A.2d. 247, 251 (D.C. 2005)) (finding that there was no valid contract because the lack of defendants' signatures, an element required by contract to form the contract, demonstrated a lack of agreement and intent to be bound).

Once a valid contract is established, the plaintiff must sufficiently allege that the opposing party "owed . . . a contractual obligation" that may be breached. *Chambers v. NASA Fed. Credit Union*, 222 F. Supp. 3d 1, 9 (D.D.C. 2016) (dismissing plaintiff's breach of contract claim because plaintiff argued that defendant had the contractual obligation to base overdraft fees on plaintiff's actual balance, but no such obligation existed within the agreed upon contract); *see also Logan v. Lasalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1023–24 (D.C. 2013) (concluding that the borrower's breach of contract claim was meritless because he did not identify any provisions, actions, or omissions within the bounds of the loan agreement that the lender affirmatively breached). If no contractual obligation is adequately alleged, the breach of contract claim will fail. *See Chambers*, 222 F. Supp. 3d at 9. Whether a contractual obligation exists is determined by the "plain language" of the governing contract. *Id.* at 10.

Here, Williams fails to allege breach of a contractual obligation that Capital One owed to Williams within the governing Account Agreement.[2] Neither party disputes the validity of the

---

[2] The terms of the Account Agreement indicate the Virginia law applies, but neither party addresses this. *See* Compl. at 43; *see also* Def.'s Mot. at 7–10 (relying on District of Columbia law). Because the parties do not seek to enforce the provision, the Court does not either.

7

Account Agreement, which is the contract at issue. *See generally* Compl.; Def.'s Mot. By opening and utilizing the credit card account with Capital One, both Williams and Capital One agreed on all material terms of the Account Agreement and demonstrated intent to be bound to the Account Agreement. *See* Compl. at 17; Def.'s Mot. at 8. Nonetheless, to prevail on his breach of contract claim, Williams must adequately allege that any breach arose from a contractual obligation due to him by Capital One. *See Chambers*, 222 F. Supp. 3d at 9. Williams argues that Capital One was obligated to give Williams proper notice of account closure, obtain his prior consent to the account closure, and address his disputes or inquiries into the account closure, thereby providing him with specific reasons for the account closure. *See* Compl. at 24–27.

The Account Agreement, however, articulates that if an account owner is in default, Capital One may, "without notifying" the account owner unless the law requires otherwise, "close or suspend [the] Account." Compl. at 42 (emphasis omitted). The Account Agreement further elaborates that Capital One "may close or suspend [an] Account at any time and for any reason permitted by law, even if [the account owner] is not in default." *Id.* at 43 (emphasis omitted). The governing provisions in the Account Agreement thus expressly authorized Capital One to close Williams's account for any appropriate and legal reason. As in *Chambers*, where the language of the contract governed permissible actions of the parties, here too, the language of the Account Agreement determines permissible acts. Here, the Account Agreement explicitly permitted Capital One to close Williams's account "at any time for any reason." *Id.* at 43. Additionally, there are no provisions in the Account Agreement that require Capital One to give sufficient notice to Williams in the event of account closure, obtain his consent prior to account

8

closure, provide him with specific reasons for account closure, or respond to his communications and disputes relating to the account. *See* Def.'s Mot. at 8; *see generally* Compl.

Williams also claims that Capital One's failure to respond to his disputes violated "the billing summary of rights provided by Capital One." Compl. at 26. This Billing Rights Summary does not appear to form part of the parties' contract, but rather represents a separate notice summarizing a consumer's rights under federal law. *Compare* Compl. at 47, *with* 15 U.S.C. § 1666 *and* 12 C.F.R. § 1026.13 (requiring creditors to investigate and correct billing errors). Looking to both the Billing Rights Summary and federal law, the Court again finds no obligation that might require Capital One to respond to Williams's dispute over closure of his credit card account. The obligation to investigate and correct errors applies when a consumer finds a mistake on a credit card statement and requires the consumer to notify the creditor in writing "within 60 days after the error appeared on [the consumer's] statement." Compl. at 47; *see also* 15 U.S.C. § 1666(a) (describing when a creditor must investigate a billing error). Capital One must then either respond in writing within 30 days of receipt or simply correct the error. *Id.* Williams does not allege that he contacted Capital One in writing regarding an error on his credit card statement. *See* 15 U.S.C. § 1666(b); 12 C.F.R. § 1026.13(a) (defining billing errors to include, for instance, inaccurate balances, substantiation of balances, and computation errors). Rather, Williams contacted Capital One by mail to "question[] why the account was closed" and ask for "documentation" regarding his violation of the Account Agreement. Compl. at 20; *see also* Compl. at 21 (stating that "Plaintiff's letters request[ed] the nature of why Defendant closed the account"); Compl. at 26 (asserting that Capital One breached its obligations because it failed to address "the account closure process . . . initiated without [Williams's] consent or prior notification"). Neither the Billing Rights Summary nor federal law thus created

an obligation for Capital One to respond to Williams.  Accordingly, Williams does not identify any provisions within the Account Agreement or another contract that give rise to the obligations he alleges Capital One was required to perform.  Williams's breach of contract claim therefore fails.[3]

Williams next claims that Capital One acted in bad faith and breached a fiduciary duty by closing his account without notifying him of the specific reasons for account closure and by failing to respond to his requests for information.  *See* Compl. at 27–29 (Count Two).  Inherently underlying all contracts is an implied covenant of good faith and fair dealing.  *See Weatherly v. Second Nw. Coop. Homes Ass'n, Inc.*, 304 A.3d 590, 596 (D.C. 2023) ("[I]n every contract there is an implied covenant that neither party shall . . . destroy[] or injur[e] the right of the other party to receive the fruits of the contract.").  Successfully stating a claim for a breach of implied covenant of good faith and fair dealing requires alleging bad faith or alleging "conduct that is arbitrary and capricious."  *See Whole Foods Mkt. Grp. v. Wical L.P.*, 288 F. Supp. 3d 176, 188 (D.D.C. 2018) (quoting *Kumar v. George Washington Univ.*, 174 F. Supp. 3d 172, 189–90 (D.D.C. 2016)).  In *Weatherly*, the plaintiff claimed that the defendant breached the implied covenant by filing a landlord-tenant action, seeking to evict plaintiff, and failing to discuss feasible alternatives to eviction.  *See Weatherly*, 304 A.3d at 596.  The court, however, held that the defendant did not act in bad faith as such conduct was "entirely consistent with [defendant's] rights under the contracts" at issue.  *Id.*  Conforming to the terms of the contract cannot be held to "frustrate . . . enjoyment of the benefits of the contract, nor could it fairly be characterized as

---

[3] The Court need not address the last required element of a breach of contract claim—breach—because Williams's claim fails at the second element.

arbitrary or capricious or made in bad faith." *Abdelrhman v. Ackerman*, 76 A.3d 883, 892 (D.C. 2013).

Likewise, Capital One did not act in bad faith here because the Account Agreement explicitly authorized Capital One's closure of Williams's account. *See* Compl. at 42–43. The Account Agreement authorized Capital One to close Williams's account "for any reason," and Capital One nonetheless gave a reason, although it may not have been to the detail and specificity that Williams desired. *Id.* at 43. Nor did Capital One act in bad faith by failing to respond to Williams's subsequent information requests. Not only did the Account Agreement not require such action, *see* Compl. at 38–44, but Capital One had already provided Williams with at least some information it was not contractually required to provide. In both Capital One's affirmative conduct and omissions of conduct, Capital One conformed to the terms of the Account Agreement. Relatedly, Capital One did not breach any fiduciary duty as Williams claims, *see* Compl. at 27–29, because "commercial entities," like Capital One, "do not owe fiduciary duties to ordinary customers." *Krukas v. AARP, Inc.* 458 F. Supp. 3d 1, 11 (D.D.C. 2020); *see also Findlay v. CitiMortgage*, Inc., 813 F. Supp. 2d 108, 120 (D.D.C. 2011) ("The relationship between a debtor and creditor is ordinarily a contractual one, lacking any fiduciary duties."). Williams points to nothing supporting a fiduciary duty in this case.

Williams additionally alleges that the contract is unconscionable. *See* Compl. at 29–30 (Count Three). Yet Williams now concedes that "unconscionability is not typically recognized as an independent cause of action." Pl.'s Opp'n at 8–9. Count Three is a contractual claim that

essentially restates and supplements Williams's breach of contract and bad faith claims, and can therefore be viewed largely in light of Counts One and Two. *See* Compl. at 24–30.[4]

For these reasons, Williams fails to state actionable contractual claims, and the Court grants the motion to dismiss as to Counts One through Three.

### B. ECOA

Williams next claims that Capital One violated ECOA by "refus[ing] to provide the specific reasons for the adverse action of revoking . . . credit" and by failing to respond to Williams's requests for explanation of the account closure. Compl. at 31. Capital One argues in response that Williams's ECOA claim must be dismissed because Capital One complied with ECOA by providing Williams with written notice of the reason for closure of his account. *See* Def.'s Mot. at 3–6. The Court concludes that Capital One's explanation was sufficient.

ECOA provides that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor," and that the statement of reasons must contain "specific reasons for the adverse action taken." 15 U.S.C. § 1691(d)(2)–(3).[5] ECOA's requirement to provide a statement of reasons "discourages discrimination and . . .

---

[4] Furthermore, Williams included various provisions of Title 28 of the D.C. Code in his breach of contract claim. *See* Compl. at 16–19, 23–25. Williams primarily refers to D.C. Code § 28-3807, which prevents *sellers* from requiring consumers to sign certain negotiable instruments as evidence of credit obligation in consumer credit sales. *See* Compl. at 17–19, 24–25; D.C. Code § 28-3807; *id.* § 28-3802(2)(A). This provision is unrelated to Williams's contractual claims, which primarily allege that Capital One—a *creditor*—breached the Account Agreement by closing Williams's credit card account without notice, consent, or explanation. *See generally* Compl. The Court thus declines to address Williams's references to the D.C. Code.

[5] Both parties address 15 U.S.C. § 1691(d)(1) of ECOA, but that provision is about notice regarding action on a completed credit application, not on an existing account. *See* 15 U.S.C. § 1691(d)(1). The provision is, therefore, not relevant to the present case. Other provisions, § 1691(d)(2)–(3), cover the adverse action here. *See Presidential Bank, FSB v. 1733 27th Street SE LLC*, 271 F. Supp. 3d 163, 170 (D.D.C. 2017).

educates consumers as to the deficiencies in their credit status." *Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 977 (7th Cir. 2004). Nonetheless, the statement of reasons need not be personally detailed or lengthy. *See O'Dowd v. South Cent. Bell.*, 729 F.2d 347, 352 (5th Cir. 1984) (holding that defendant telephone company's request to plaintiff consumer for a $100 deposit "due to [plaintiff's] past payment record" satisfied ECOA because plaintiff was sufficiently informed of the specific reason for the deposit request). A short statement may suffice "so long as it reasonably indicates the reasons for adverse action." *Id.*; *see also Barat v. Navy Fed. Credit Union*, 127 F.4th 833, 837 (11th Cir.) (finding that defendant credit union's boilerplate language, "[p]oor credit performance with Navy Federal" in explaining its denial of plaintiff's loan application did not violate ECOA because the statement provided an adequate reason for the denial of loans); *Wigod v. PNC Bank, N.A.*, 338 F. Supp. 3d 758, 766–67 (N.D. Ill. 2018) (finding "[i]ncome insufficient to support credit obligations" sufficient); *Higgins v. J.C. Penney, Inc.*, 630 F. Supp. 722, 724–25 (E.D. Mo. 1986) (finding "credit bureau report/delinquent history" sufficient); *King v. Police & Fire Fed. Credit Union*, No. 16-6414, 2019 WL 2226049, at *5–6 (E.D. Pa. May 22, 2019) (finding "limited credit history," and the "[l]ength of [t]ime [a]ccounts [h]ave [b]een [e]stablished" sufficient); *Aikens v. Nw. Dodge, Inc.*, No. 03 C 7956, 2006 WL 59408, at *3–4 (N.D. Ill. Jan. 5, 2006) (finding "excessive credit obligations and credit file" sufficient).

Capital One, in written communication, explained that it closed Williams's account "because activity on this . . . account [was] not consistent with [Capital One's] expectations for account usage and violate[d] the Capital One Customer Agreement." Compl. at 48. Like the statement of reasons in *O'Dowd* and *Barat*, Capital One's statement concisely identified the reasons for closing Williams's account. *O'Dowd*, 729 F.2d at 352; *Barat*, 127 F.4th at 837. In

fact, Capital One's statement is more elaborate than the statements in *O'Dowd* and *Barat* and specifically directed Williams to the Account Agreement for further basis of his violation that led to the account closure. *See id.* Capital One's letter to Williams satisfies ECOA's specific statement of reasons requirement, and Williams accordingly fails to state a claim under ECOA.

Having determined that Williams's Complaint fails to state a claim on either his contract or ECOA theories, the next question is whether the Court must dismiss the Complaint with prejudice, or whether Williams should be permitted the opportunity to amend. Williams filed a previous complaint regarding this dispute, and the parties fully briefed a motion to dismiss before the Court granted Williams's motion for voluntary dismissal. *See* Order Dismissing Case, *Williams v. Capital One Bank, N.A.*, No. 23-cv-3898 (May 19, 2024), ECF No. 14. Williams therefore had the opportunity to amend his complaint and replead, and Capital One has moved to dismiss twice. The Circuit has previously framed dismissal with or without prejudice as the question of whether a Rule 15(a) amendment would be available. *See Wilcox v. Georgetown Univ.*, 987 F.3d 143, 149 (D.C. Cir. 2021). "Leave to amend a complaint under Rule 15(a) 'shall be freely given when justice so requires.'" *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting Fed. R. Civ. P. 15(a)(2)). It may be denied, however, where there has been a "repeated failure to cure deficiencies by amendments previously allowed," there would be "undue prejudice to the opposing party by virtue of allowance of the amendment," or amendment would be "futil[e]." *Atchinson v. District of Columbia*, 73 F.3d 418, 425 (D.C. Cir. 1996). The Court finds that the filing of any further amended complaints would unduly prejudice Capital One because of the action Williams previously filed, and that Williams is unable to cure the factual deficiencies present in the operative Complaint. The Court thus dismisses the Complaint and the action with prejudice.

14

### C. Citations to Nonexistent Legal Authority

Courts have recently seen increasing reliance on artificial intelligence in legal proceedings, leading to the use of nonexistent citations in court documents. *See Park v. Kim*, 91 F.4th 610, 613–16 (2d Cir. 2024); *Ruggierlo, Velardo, Burke, Reizen & Fox, P.C. v. Lancaster*, No. 22-12010, 2023 WL 5846798, at n.5 (E.D. Mich. Sept. 11, 2023); *Anonymous v. New York City Dep't of Educ.*, No. 1:24-cv-4232, 2024 WL 3460049, at *7 (S.D.N.Y. July 18, 2024). It appears here that Williams too may have relied on an artificial intelligence tool to draft his brief. *See* Pl.'s Opp'n at 2–3 (referring to legal generative AI program CoCounsel); Def.'s Reply at 3 (explaining that Capital One "can find no such cases with the listed case captions that stand for the position Plaintiff claims they do"). Williams cites to cases that do not exist and may either be from his imagination or represent hallucinations of artificial intelligence. *See* Pl.'s Opp'n at 4–5. For example, "Pettway v. American Savings & Loan Association, 197 F. Supp. 489 (N.D. Ala. 1961)" is not a case that exists. *Id.* at 4. While *Williams v. Equifax Information Services, LLC* is a case that exists, "560 F. Supp. 2d 903 (E.D. Va. 2008)" is the incorrect citation, and "560 F. Supp. 2d 903" cites to a completely different case from the Northern District of California. *Id.* at 5. There are multiple cases named *Williams v. Equifax Information Services, LLC* and it is unclear which specific case Williams seeks to cite or whether the cases lend support for Williams's claims. Other cases cited in Williams's brief present similar issues. The use of these nonexistent citations dramatically weakens Williams's opposition to Capital One's motion to dismiss because he fails to cite to supporting authority.

It is not acceptable for parties to submit filings to the Court containing citations to legal authority that does not exist, whether drafted with the assistance of artificial intelligence or not. *See Park*, 91 F.4th at 616 (referring attorney for investigation for drafting her brief by relying on

ChatGPT, an artificial intelligence tool); *Ruggierlo*, 2023 WL 5846798, at n.5 (warning a *pro se* defendant that using generative artificial intelligence to create citations may result in court-imposed sanctions and wasted the court's, the opposing party's, and defendant's own resources); *Anonymous*, 2024 WL 3460049, at *7 (warning a *pro se* plaintiff that citations generated by artificial intelligence are unreliable, and that citation to nonexistent legal authority is unacceptable). The Court strongly warns Williams against filing briefs with fabricated case citations in this Court or any other.[6]

### V.  CONCLUSION.

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**, and the action is **DISMISSED WITH PREJUDICE**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 18, 2025                                                                 RUDOLPH CONTRERAS
                                                                                                           United States District Judge

---

[6] The Court notes that Williams has other cases pending before other judges of this Court. If Williams has followed the same practices in those courts to generate pleadings that remain pending, he must notify such courts and correct citations to erroneous or non-existent cases.